**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
|     JOAN KAHN, | : | |
| | : | |
|                     Debtor. | : | Bky. No. 08-12890ELF |

## A M E N D E D   M E M O R A N D U M

The matter currently before the court raises the issue whether the bankruptcy court retains subject matter jurisdiction to adjudicate a post-discharge dispute concerning a secured creditor's alleged breach of a reaffirmation agreement entered in a no-asset chapter 7 bankruptcy case. For the reasons that follow, I determine that the bankruptcy court lacks jurisdiction.

### I. BACKGROUND

The Debtor is the owner of a 2002 Hyundai Sante Fe ("the Vehicle"). Wells Fargo Financial Pennsylvania, Inc. ("Wells Fargo") holds a purchase money security interest in the Vehicle.[1]

After the Debtor filed this bankruptcy case, Wells Fargo sent the Debtor a letter dated June 2, 2008, proposing that the parties enter into a reaffirmation agreement regarding the

---

[1] The Debtor does not dispute that Wells Fargo has a security interest in the Vehicle. However, due to what I presume to be an oversight, she did not disclose Wells Fargo as a secured creditor her bankruptcy schedules. She checked the box for **"None"** on Schedule D (Creditors Holding Secured Claims). See Docket Entry No. 5, Schedule D. Additionally, on her Statement of Intention, which asks whether she has secured property that she intends to surrender, claim as exempt, redeem or reaffirm, she listed "**None.**" See Docket Entry No. 9. The Debtor did disclose her monthly payment of $280.00 for the Vehicle on Schedule J. See Docket Entry No. 5, Schedule J.

Vehicle ("the Proposed Reaffirmation").[2] The Proposed Reaffirmation was accompanied by disclosures intended to satisfy the requirements of 11 U.S.C. §524(k).[3] The Proposed Reaffirmation provided for a reduction of the principal balance of the debt, interest rate and required monthly payment as follows:

| Terms | Original Contract Terms | Reaffirmation Terms |
| --- | --- | --- |
| **Balance** | $10,375.04 | $7,148.75 |
| **Interest Rate** | 16.99% | 8.0% |
| **Monthly Payment** | $276.80 | $174.52 |

The letter accompanying the Proposed Reaffirmation advised the Debtor that, to accept

---

[2] Under the Bankruptcy Code, a "reaffirmation agreement" is an agreement that provides that, notwithstanding the debtor's discharge, the debtor will remain legally obligated to repay part or all of his or her debt to the creditor. See, e.g., 11 U.S.C. §524(c); In re Eiler, 390 B.R. 920, 924 (Bankr. E.D. Wis. 2008) ("[A] reaffirmation agreement has the effect of reaffirming the debtor's preexisting in personam liability on the underlying obligations giving rise to the debt.") (citation and internal emphasis omitted). A "valid reaffirmation agreement thus allows a favored creditor to collect the amount reaffirmed as a personal liability without violating section 524(a)'s discharge injunction." Id.

[3] The statutory authority for creating valid, binding reaffirmation agreements is codified at 11 U.S.C. §524(c). That section of the Bankruptcy Code sets forth strict requirements for creating enforceable agreements. Generally speaking, with respect to debtors who are represented by counsel, as the Debtor was here, a legally binding reaffirmation agreement is created pursuant to §524(c) <u>only if</u>

    (1)    the agreement was made before the granting of the discharge;
    (2)    the debtor received certain disclosures (specifically, those mandated by 11 U.S.C. §524(k)) at or before the time the agreement was signed;
    (3)    the agreement <u>was filed with the bankruptcy court</u>; and
    (4)    the debtor did not rescind the agreement during the "cooling off" period (i.e., prior to discharge or within sixty days after the agreement is filed with the court).

See id. §524(c) (emphasis added).

2

Wells Fargo's offer, she needed to sign and return two copies of the agreement. Wells Fargo would then assume responsibility for filing a fully-executed agreement with the bankruptcy court. As amplified below, the Debtor contends that she and her counsel signed and mailed copies of the Proposed Reaffirmation to Wells Fargo shortly after receiving them in June 2008.[4]

The administration of the Debtor's chapter 7 case was largely uneventful. By June 5, 2008, the meeting of creditors was held and concluded and the Chapter 7 Trustee filed a Report of No Distribution. On August 21, 2008, the Debtor received her discharge. See Docket Entry No. 17. On September 9, 2008, the case was closed. See Docket Entry No. 20. No reaffirmation agreement was filed prior to these events.

### A. The First Emergency Motions

On October 15, 2008, more than one (1) month after this case was closed, the Debtor filed two motions: (1) an Emergency Motion to Reopen her case and (2) a Motion for Equitable Relief to Recover Repossessed Motor Vehicle and for Damages (collectively, "the First

---

[4]    In In re Price, 370 F.3d 362 (3d Cir. 2004), our Court of Appeals held that the Bankruptcy Code permits a debtor who does not reaffirm a debt secured by the debtor's property, to retain possession of the property by continuing to pay the monthly instalment payments falling due under the contract. The vitality of court's holding in Price is uncertain after the effective date of the amendments to the Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"). Compare In re Rice, 2007 WL 781893 (Bankr. E.D. Pa. Mar. 12, 2007); In re Anderson, 348 B.R. 652 (Bankr. D. Del. 2006) with In re Baker, 390 B.R. 524 (Bankr. D. Dela. 2008), aff'd, 400 B.R. 136 (D. Del. 2009). Due to this uncertainty, after the enactment of BAPCPA, many debtors enter into reaffirmation agreements with secured automobile lenders to insure that they can retain possession of their automobiles. In some cases, to induce debtors to reaffirm, secured automobile lenders agree to modifications of the repayment terms that favor the debtor, presumably based on the business judgment that the stream of income received after reaffirmation provides a greater financial benefit than the amount that would be obtained through a repossession and sale of the collateral.

3

Emergency Motions"). See Docket Entry Nos. 21, 22. In these motions, the Debtor claimed that she and her counsel signed and mailed copies of the Proposed Reaffirmation to Wells Fargo in June 2008 and that, shortly afterward, she began making reduced monthly payments in accordance with the terms of the Proposed Reaffirmation (i.e., $174.52 rather than $276.80). See Docket Entry No. 22, ¶¶ 8, 9. The dispute arose because Wells Fargo claimed it never received what the Debtor allegedly placed in the mail – i.e., copies of the signed Proposed Reaffirmation (hence, the lack of filing with the bankruptcy court). See Docket Entry No. 22, ¶ 13.[5] Still operating under the terms of the original loan agreement with the Debtor, Wells Fargo repossessed the Vehicle in October 2008, after receiving what it perceived to be a shortfall in the required monthly payment. See Docket Entry No. 22, ¶¶ 4, 6.

In the First Emergency Motions, the Debtor contended she made a good faith effort to reaffirm her debt and that, in light of this, Wells Fargo's refusal to operate under the Proposed Agreement and return the Vehicle was in bad faith. See Docket Entry. No. 21, ¶¶ 10, 12, 13. She sought to have the court:

    (1) reopen her bankruptcy case; and

    (2) order Wells Fargo to:

        (a) return the Vehicle;

        (b) submit a reaffirmation agreement for nunc pro tunc determination on approval; and

---

[5] Indeed, Wells Fargo contended that it made follow up phone calls to the Debtor's counsel after receiving no signed copy of the Proposed Reaffirmation and that a voice message left with the Debtor's counsel in July 2008 went unreturned. See Wells Fargo's Memorandum of Law at 2 (Docket Entry No. 38).

      (c) pay the Debtor compensatory and punitive damages and attorneys' fees and costs.[6]

On October 17, 2008, the court held an expedited hearing by teleconference on the Debtor's First Emergency Motions.  See Docket Entry No. 24.  At the hearing, the parties reached agreements intended to settle their differences on a number of issues.  First, they agreed that the Debtor would forward a copy of the signed Proposed Reaffirmation to Wells Fargo, and that Wells Fargo would file that agreement with the bankruptcy court.  Second, they agreed that Wells Fargo would issue a release instruction to the auction house that was storing the Vehicle and that the Debtor would be responsible for retrieving the Vehicle.  Finally, they agreed that the Debtor would be responsible for charges incurred for repossession of the Vehicle and for storage costs and that those costs would be added to the end of the Debtor's contract period.  See Docket Entry No. 28, ¶ 14, 15 (setting forth the Debtor's understanding of these terms of the parties' agreement); Docket Entry No. 31 (admitting that Wells Fargo considered these terms part of the parties' agreement).

Following the October 17th hearing, and upon agreement of the parties, the court entered an Order on October 20, 2008 that (1) reopened the bankruptcy case, (2) granted the Debtor and Wells Fargo leave to file the reaffirmation agreement on or before October 27, 2008, and (3) provided that, if there were no further docket activity by November 28, 2008, the case would be re-closed.  See Docket Entry No. 23.

On October 23, 2008, Wells Fargo filed a fully-executed reaffirmation agreement

---

   [6]  But see Fed. R. Bankr. P. 7001(1), (7) (proceedings to recover money or property or to obtain an injunction or other equitable relief are adversary proceedings, not contested matters).

concerning the Vehicle ("the Reaffirmation Agreement").[7]  See Docket Entry No. 26.

### B. The Second Emergency Motion

Although it appeared at the time that the parties's settlement agreement and filing of the Reaffirmation Agreement would put the dispute concerning the Vehicle to rest, subsequent events proved otherwise.  On November 5, 2008, the Debtor filed its Second Emergency Motion for Equitable Relief to Recover Repossessed Motor Vehicle, Charges and Lost Wages Incurred by Debtor, Attorney's Fees and other Damages ("the Second Emergency Motion").  See Docket Entry No. 28.

In the Second Emergency Motion, the Debtor alleged that, despite Wells Fargo's earlier agreement to release the Vehicle, the Debtor was unable to retrieve it from the auction house.  See Second Emergency Motion ¶26.  She contended that she had incurred substantial attorneys' fees, costs, lost wages and other damages due to the delay in her ability to retrieve the Vehicle.  See id. ¶¶32, 36-38.  She accused Wells Fargo of having engaged in "cavalier and wanton" behavior.  See id. ¶33.  The Debtor requested that the court (1) compel Wells Fargo to return the Vehicle, (2) rule that the Debtor was no longer liable for paying repossession costs, and (3) order Wells Fargo to pay her attorneys' fees, costs and punitive damages.[8]

Wells Fargo filed its Answer to the Second Emergency Motion on December 1, 2008,

---

[7] This filing was accompanied by the required Certification by Debtor's Attorney and Debtor's Statement in Support of Reaffirmation.  See Docket Entry No. 26; see also 11 U.S.C. §524(k)(5), (k)(6).

[8] See n.6, supra.

denying that it breached any agreement with the Debtor. See Docket Entry No. 31. Wells Fargo claimed that it timely provided release instructions to the auction and had re-faxed those releases at the Debtor's request. See Answer to Second Emergency Motion ¶¶19, 30 (Docket Entry No. 31). While acknowledging that there was some confusion at the auction house with respect to the location of the Vehicle, Wells Fargo contended that the Debtor could have avoided filing her motion simply by making a further telephone call to Wells Fargo's counsel to address the matter. See id. ¶38.

The court held a hearing on the Second Emergency Motion on December 10, 2008. At that hearing, the Debtor's attorney informed the court that the Debtor had recently succeeded in retrieving the Vehicle from the auction house. Nonetheless, the Debtor wished to press her Second Emergency Motion to obtain damages (including attorney's fees) related to the delay in the return of the Vehicle and physical damage to the Vehicle that allegedly occurred while it was in Wells Fargo's possession.

At the hearing, a colloquy ensued concerning the legal authority for the Debtor's asserted claim, i.e., the identity and nature of the cause of action or claim being asserted by the Debtor. The Debtor asserted that Wells Fargo's repossession of the Vehicle and delay in returning it breached the Reaffirmation Agreement. Significantly, the Debtor never asserted that Wells Fargo's acted in violation of any provision of the Bankruptcy Code.

Exercising its independent obligation to determine whether it has subject matter jurisdiction over the Debtor's asserted claim, see In re Spree.com Corp., 295 B.R. 762 (Bankr. E.D. Pa. 2003), the court then raised and, upon request, gave the parties an opportunity to brief,

the issue.[9]

Both sides having filed respective memorandum of law, see Docket Entry Nos. 36, 38, the jurisdictional issue is now ripe for determination.

## II. DISCUSSION

### A.

As our Court of Appeals observed in Stoe v. Flaherty,

> Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases "under" title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. The category of cases "under" title 11 refers merely to the bankruptcy petition itself. A case "arises under" title 11 if it invokes a substantive right provided by title 11. . . . The category of proceedings "arising in" bankruptcy cases "includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent or priority of liens." Proceedings "arise in" a bankruptcy case, "if they have no existence outside of bankruptcy." Finally, a proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."

Id. 436 F.3d 209, 216 (3d Cir. 2006) (internal quotations and citations omitted).

The Debtor characterizes the claim she asserts via her Second Emergency Motion as one for breach of the Reaffirmation Agreement.[10] Consequently, I conclude, without extended

---

[9] Specifically, the court entered an Order on December 10, 2008 that permitted the Debtor until December 31, 2008 to file a memorandum of law on the issue of subject matter jurisdiction and Wells Fargo until January 14, 2009 to do the same. See Docket Entry No. 33.

[10] I note that in the Debtor's Second Emergency Motion and Memorandum of Law on Jurisdiction, the Debtor also charges Wells Fargo with having violated order of this court. See Debtor Second Emergency Motion ¶38 ("Debtor's counsel is entitled to its attorney's fees and cost incurred as a result of the gross bad faith and wanton disregard of the Court's Order."); Debtor's Memorandum of Law at 2 ("This Court, upon hearing, ordered the motor vehicle to be returned to the Debtor, and, after a

discussion, that three (3) of the four (4) types of proceedings described in Stoe in which bankruptcy jurisdiction are inapplicable here (i.e., categories (1), (3) and (4) in the above-quoted passage).

It appears to be undisputed that the Debtor's motion does not present a case "under" title 11 or an issue "arising in" a case under title 11.  The Debtor does not contend that her current motion involves the administration of her bankruptcy estate (her bankruptcy case had been closed at the time she filed her First Emergency Motions) or administrative matters of the bankruptcy case.  See Stoe, 436 F.3d at 218 ("arising in" jurisdiction extends to, inter alia, allowance and disallowance of claims, determining the dischargeability of debts, discharges, confirmation plans and orders permitting the assumption or rejection of contracts).  The Debtor has also failed to articulate how her former bankruptcy estate or any estate property is, or, conceivably could be, implicated by her current breach of contract claim so as to vest the court with "related to" jurisdiction.  Cf. id. at 216 n.3 ("[f]or 'related to' jurisdiction to exist at the post-confirmation stage, "the claim must affect an integral aspect of the bankruptcy process-there must be a close

---

substantial period of time during which the vehicle was not turned over to Debtor, [the Debtor] filed a second motion and again requested the Court to not only again command the return of the vehicle and requested damages.").

The Debtor's statements are incorrect and unsupported by the record.  During the telephone conference with counsel on October 17, 2008, the parties agreed that the First Emergency Motions could be resolved with the filing of the Reaffirmation Agreement.  At the conclusion of that hearing, the court entered the Order, dated October 17, 2008 which reopened the Debtor's case to allow the parties to file the Reaffirmation Agreement.  The court held two subsequent telephone conferences and a hearing in court on the Debtor's Second Emergency Motion, after which the court entered an Order deferring a decision on the Motion pending a determination on subject matter jurisdiction.  See Docket No. 33.  At no time did the court order Wells Fargo to return the Vehicle or take any other action.  Therefore, to the extent that the Debtor may be arguing that the court has already exercised jurisdiction in this matter and therefore, should continue to do so to enforce its prior order(s), the argument is based on an incorrect premise.

9

nexus to the bankruptcy plan or proceeding."). Once a chapter 7 case has been closed, as the Debtor's case has, the bankruptcy "court generally retains jurisdiction over only disputes which clearly involve property of the estate." In re Cuascut, 91 B.R. 13, 15 (Bankr. E.D. Pa. 1988); see also Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) ("related to" jurisdiction exists where "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy"). Here, the Debtor's bankruptcy case has been administered and closed and the Debtor has received her discharge.

This leaves the "proceedings arising under title 11" category of 11 U.S.C. §1334(b) as the only potential basis for jurisdiction . At the December 10, 2008 hearing, the Debtor's counsel urged that the bankruptcy court had jurisdiction by virtue of the fact that the Bankruptcy Code itself provided the statutory authorization for the Reaffirmation Agreement and that the bankruptcy court essentially "approved" the agreement by permitting its filing. Respectfully, I disagree.

It is true that 11 U.S.C. §524 creates the statutory requirements for creating binding reaffirmation agreements. However, it does not follow that the Bankruptcy Code includes a federal cause of action for damages for breaches of those agreements[11] and, in the absence of such a federal bankruptcy cause of action, the bankruptcy court lacks "arising under" jurisdiction under 28 U.S.C. §1334(b) to adjudicate the merits of such alleged breaches.

Contrary to the Debtor's implicit premise, an enforceable reaffirmation agreement is a new contract to which conventional contract principles apply, construed in accordance with

---

[11] See generally In re Joubert, 411 F.3d 452, 456 (3d Cir. 2005) (no private right of action under the Bankruptcy Code for alleged violation of 11 U.S.C. §506).

10

relevant state law. Eiler, 390 B.R. at 924. Once formed in accordance with the procedures mandated by the Bankruptcy Code in 11 U.S.C. §524(c), any subsequent breach of a reaffirmation agreement is governed by relevant state law. In re Gitlitz, 127 B.R. 397, 400 (Bankr. S.D. Ohio 1991); see also 11 U.S.C. §524 (c) ("[a]n agreement . . . based on a debt that is dischargeable . . . is enforceable only to any extent enforceable under applicable nonbankruptcy law"). As the court reasoned persuasively in In re Gitlitz:

> Congress clearly did not contemplate bankruptcy court involvement in reaffirmation agreements beyond the requirements set forth in §524(c) and (d). It was contemplated that disputes between parties to reaffirmation agreements would take place in non-bankruptcy courts using non-bankruptcy law.

127 B.R. at 400 (citation omitted). Such is the case here.

Perhaps a different conclusion might be reached with respect to the court's subject matter jurisdiction if the Debtor were alleging that there had been a violation of the bankruptcy laws or rules, see, e.g., Stoe, 436 F.3d at 216 ("arising under" jurisdiction implicated if the Bankruptcy Code "creates the cause of action or provides the substantive right invoked"), or fraud or wrongdoing with respect to the reaffirmation process, see, e.g., In re Bruzzese, 214 B.R. 444 (Bankr. E.D.N.Y. 1997). But that is not the nature of the Debtor's claim in this matter.

When a debtor invokes 11 U.S.C. §524(c), typically, the dispute involves the debtor's claim that a reaffirmation agreement is not enforceable because it did not comply with all of the requirements of §524(c) and therefore, the underlying debt was discharged. Such claims actually are contempt claims under §524(a) for violation of the discharge order, see Cox. v. Zale Del., Inc., 239 F.3d 910 (7th Cir. 2001), with the creditor usually asserting in response that the discharge injunction did not apply due to a valid reaffirmation of the debt. Here, the Debtor

11

makes no such claim. The Debtor agrees that the Reaffirmation Agreement is valid. Indeed, it is the Debtor who seeks to enforce it.

In short, the Debtor is not seeking to enforce any rights accorded to her by the Bankruptcy Code. She is seeking to enforce what she perceives to be her state law contractual rights under a contract that the Bankruptcy Code has permitted to pass through the bankruptcy case unaffected (except to the extent it was modified by the parties' reaffirmation agreement). The Debtor is asserting a contract claim, and perhaps other claims, all of which are governed by state law and that are enforceable in a state court. As a result, there is no basis for this court to exercise "arising under" jurisdiction under 28 U.S.C. §1334(b).

**B.**

In her post-hearing brief, the Debtor relies on a district court opinion in In re Diaz, 2001 WL 123622 (E.D. Pa. Feb. 5, 2001) in support of her argument that this court has subject matter jurisdiction to adjudicate her dispute.

According to the district court opinion, in Diaz, the debtors filed a motion in bankruptcy court to enjoin the sale of their repossessed motor vehicle following its repossession by the secured creditor, Chrysler Financial Company, LLC ("Chrysler"). The debtors also filed a motion for sanctions against Chrysler for allegedly violating a bankruptcy court order. The district court opinion does not make clear what court order was allegedly violated.[12]

At the conclusion of the hearing on the debtors' motion, the bankruptcy court ruled that Chrysler must return the vehicle to the debtors provided that certain conditions were met.

---

[12] The bankruptcy court opinion in Diaz was not made available to this court.

Apparently, it was established at this hearing that, although the debtors did not file a reaffirmation agreement prior to receiving their discharge, all of the parties had contemplated entering into a reaffirmation prior to the entry of the discharge order, and for some period of time thereafter, acted as though they were performing pursuant to one (with the debtors making payment and Chrysler accepting payment and permitting the debtors to retain the motor vehicle). In these circumstances, it appears that the bankruptcy court concluded that Chrysler acted wrongfully in later repossessing the automobile without advance notice to the debtors. On appeal, Chrysler argued that the bankruptcy court had exceeded its authority in, inter alia, reopening the bankruptcy case sua sponte, directing the entry of a reaffirmation agreement nunc pro tunc, and directing Chrysler to return the vehicle to the debtors. The district court affirmed the bankruptcy court's decision.

       The Debtor relies on the following sentence in Diaz to justify subject matter jurisdiction in this case: "[t]he bankruptcy court's equitable jurisdiction contemplated in [11 U.S.C.] §105, in conjunction with its independent authority to reopen closed bankruptcy cases pursuant to §350(b), is more than sufficient to authorize the court's exercise of its equity power under the circumstances" of the case. Id. at *3.

       I am not persuaded that Diaz provides a rationale for finding subject matter jurisdiction in this case. To begin with, it is difficult to the extrapolate the jurisdictional basis of Diaz – written as a brief affirmation of the bankruptcy court opinion – because the Diaz opinion does not provide a full description of the claims the debtor asserted, or the legal authority for those claims. To the extent the Debtor cites Diaz as standing for the broad proposition that jurisdiction to adjudicate her breach of contract claim for damages is provided entirely by 11 U.S.C. §105,

however, she is incorrect. Section 105(a) does not confer an <u>independent</u> basis for exercising subject matter jurisdiction. Rather, it aids the bankruptcy court in its exercise of <u>already-existing</u> subject matter jurisdiction. <u>See</u> <u>In re Combustion Eng'g, Inc.</u>, 391 F.3d 224, 225 (3d Cir. 2004) ("§105 does not provide an independent source of federal subject matter jurisdiction"). There appearing to be no independent basis for exercising subject matter jurisdiction with respect to the claims the Debtor has asserted, §105 is of no aid to her.

### III. CONCLUSION

Accordingly, I concluded that this court lacks subject matter jurisdiction over the claim raised in the Debtor's Second Emergency Motion. An appropriate Order shall be entered dismissing the Debtor's Second Emergency Motion for lack of subject matter jurisdiction.

**Date: April 16, 2009**

                **ERIC L. FRANK**
                **U.S. BANKRUPTCY JUDGE**